## JONES v. BACON.

*(Supreme Court, General Term, Fifth Department. June, 1892.)*

INDEMNITY—EVIDENCE—APPEAL TO PREJUDICE.

　　In an action on an alleged promise of defendant's testator to indemnify plaintiff against liability as indorser of his (plaintiff's) son-in-law's notes, evidence that defendant's testator and plaintiff's son-in-law speculated together in hops, and that defendant's testator refused to accept a good offer for certain hops which would have resulted in a large profit and have paid off all the son-in-law's indebtedness, was foreign to the issue, and wrongly admitted as liable to prejudice defendant by exciting sympathy in favor of plaintiff's son-in-law, who as an interested party was the principal witness thereto.

Appeal from circuit court, Ontario county.

Action by Charles Jones against Orin S. Bacon, as surviving executor of James McKechnie, deceased, to recover on an alleged obligation of indemnity. From a judgment for plaintiff for damages and costs, and an order of special term denying his motion for a new trial on a case and exceptions, defendant appeals. Reversed.

Argued before DWIGHT, P. J., and MACOMBER and LEWIS, JJ.

*Henry M. Field* and *Frank Rice,* for appellant. *William H. Smith,* for respondent.

LEWIS, J. We think a new trial should be granted in this case because of the admission of improper evidence. Plaintiff's cause of action, as stated in his complaint, is that on or about the second day of April, 1885, one Sherman Kingsbury was indebted to the firm of McKechnie & Co., who were bankers in the village of Canandaigua, N. Y., in the sum of $15,000. That the firm was composed of James McKechnie, now deceased, Alfred Denbow, now deceased, and Jessie McKechnie. That on the 2d day of April, 1885, the said James McKechnie, who was then a member of said banking firm, applied to the plaintiff to indorse a promissory note made by Kingsbury for the sum of $15,000. The note was to be discounted by this banking firm for the benefit of Kingsbury. The plaintiff at first refused the request. That thereupon McKechnie stated, promised, and agreed that if the plaintiff would indorse said note, and such renewals thereof as might be required from time to time by Kingsbury in his business, and also indorse such other notes as might thereafter be made by Kingsbury in his business and discounted by the bank, and such renewals thereof as might be required by Kingsbury in his business, he, James McKechnie, would protect the plaintiff, and save him harmless from all loss or liability incurred by the plaintiff by reason thereof. That relying solely upon said agreement of McKechnie, he indorsed said $15,000 note, and thereafter he indorsed renewals of the said $15,000 note. That relying upon such promise and agreement, he indorsed other notes and renewals of

said other notes, amounting to the sum of $12,000. And that thereafter, in the month of July, 1888, James McKechnie again applied to the plaintiff and requested him to indorse Kingsbury's note for $20,000, dated July 12, 1888, payable to McKechnie & Co., in renewal of the aforesaid note of $15,000, and covering other indebtedness of Sherman Kingsbury to the bank. That the plaintiff at first refused to indorse it. That thereupon McKechnie represented that Kingsbury was all right and his paper was all right, and agreed with the plaintiff that, if he would indorse the note, he would never have the same to pay or have any trouble or expense by reason of his indorsing the same, but that he, said James McKechnie, would pay the same and take it up, and save the plaintiff harmless from all payments, loss, or damage caused or incurred by reason of his having indorsed said note; that the plaintiff, relying upon the promise, did indorse the note. Then follow allegations that Kingsbury was at the time insolvent, to the knowledge of James McKechnie, and that the plaintiff thereafter, at the request of McKechnie, and upon his promise to save the plaintiff harmless therefrom, executed and delivered to the bank mortgages upon his real estate and chattel mortgages to secure the payment of the notes so indorsed by him. That Kingsbury did not pay the notes, and McKechnie failed and neglected to pay or take care of them. That by reason of the failure of Kingsbury to pay said notes, and the failure of McKechnie to keep his agreements, the mortgages given by the plaintiff were foreclosed by the firm of McKechnie & Co., and that plaintiff's real estate was sold thereon, and was lost to the plaintiff, to his damage in the sum of $30,-000. That on the 12th day of September, 1889, James McKechnie died, leaving a last will and testament, whereby he appointed the defendant, Orin S. Bacon, and Alfred Denbow his executors. That Denbow died on the 5th day of February, 1890, leaving the defendant, Orin S. Bacon, a surviving executor under the will. The defendant's answer put in issue all of the allegations of the complaint as to the agreements of James McKechnie. All of the notes comprising the debt to the bank were discounted for Kingsbury's benefit. Jones was an accommodation indorser of some of the notes and an accommodation maker of the balance. The alleged agreements upon which the plaintiff relied to establish his cause of action were claimed by the plaintiff to have been made in the immediate presence of himself, Kingsbury, McKechnie, and Alfred Denbow, and of no one else.

Plaintiff's cause of action, if he had one, accrued before the death of McKechnie and Denbow. His action was not brought until both McKechnie and Denbow had died. The witness upon whom plaintiff mainly relied to prove what occurred at the time the alleged agreements were made was Kingsbury. Under the circumstances, his testimony is justly subject to suspicion and criticism. Other witnesses were called by the plaintiff to corroborate Kingsbury's testimony, but their evidence did not materially strengthen the plaintiff's case. At the time of the making of the contract in July, 1888, on which plaintiff mainly relies to sustain his cause of action, he was liable to the bank as indorser upon the notes of Kingsbury to the amount of about $18,000. His claim is that McKechnie by his promise to plaintiff obligated himself to indemnify and save him harmless from his liability as such indorser; that in effect McKechnie became Kingsbury's indorser. If he made such an agreement, his estate is bound to perform it. There is much in the evidence which tends to excite grave suspicion as to the *bona fides* of the plaintiff's claim. Kingsbury testifies that McKechnie stated, when urging the plaintiff to indorse the notes, that it was a mere matter of form; that he wished plaintiff to indorse because the rules of the bank required an indorser on paper before it would discount it, but that McKechnie would take care of the paper and save plaintiff harmless, etc. Yet the plaintiff claims that after being told this, and on the 19th of January, 1889, more than six months after his indorsement of the $20,000 note, upon the mere statement of Kingsbury

that the bank required him to give a mortgage upon his real estate as collateral security to his indorsements, he consented and gave a mortgage upon his farm, and again, on the 20th day of March thereafter, he gave to the bank a mortgage upon his home in Canandaigua for the same purpose, and these were followed by chattel mortgages upon his personal property, as collateral to three notes of $1,000 each, which he gave for the accommodation of Kingsbury, and which were discounted by the bank. It is difficult to reconcile the giving of these mortgages with the claims now made by the plaintiff. Such a claim should be established by very satisfactory evidence. It should be carefully scrutinized, and admitted only on very satisfactory proof. *Kearney* v. *McKeon,* 85 N. Y. 139. Evidence of a doubtful or improper character should be carefully excluded.

Kingbury is plaintiff's son-in-law. He married plaintiff's daughter and only child 23 years before this trial, and during all that time plaintiff was a member of Kingsbury's family. The defendant objected to Kingsbury testifying to what occurred at the time of the making of the alleged agreement, because of the death of McKechnie; thereupon plaintiff's release of all claims, etc., against him was read in evidence. While he may have been a competent witness, he was practically an interested witness. The plaintiff was permitted, under the objection and exception of the defendant, to show that during the time the events mentioned were transpiring Kingsbury was engaged with James McKechnie and Alfred Denbow speculating in hops. Plaintiff offered in evidence a written contract, made on the 7th day of February, 1889, between James McKechnie, Alfred Denbow, and Sherman Kingsbury, which recited that in the month of April, 1885, the parties to the contract entered into a parol contract for the purchase of hops; that McKechnie and Denbow were to furnish the money to pay for the hops. Kingsbury was to make the purchases and furnish storage for them. The hops were to be and remain the property of McKechnie and Denbow, and were to be sold at their option; and as compensation for the services of Kingsbury, and for the use of his storehouse, he was to receive, when they were sold, one half of the net profits arising out of the transactions. The contract was received in evidence, over the objection and exception of the defendant. Plaintiff gave evidence tending to show that there had been purchased a large quantity of hops under the agreement mentioned; that they were in Kingsbury's storehouse, and he offered to show that the parties had an opportunity to sell the hops at a very large profit. The evidence was objected to by the defendant as incompetent, immaterial, and improper. Thereupon the plaintiff asked the witness Kingsbury, "Was there an occasion when you received a telegram which you showed to McKechnie?" The question was objected to, and plaintiff stated that he proposed to show that Mr. Kingsbury received a telegram offering 40 cents a pound for the hops, there being a large amount on hand in the storehouse; that he went with it directly to McKechnie; that McKechnie said, "Hold on; I want to send and get further information from New York." A friend with him at the time advised Mr. Kingsbury to sell, and Mr. McKechnie declined to permit him to sell. A few days subsequently, this friend who was with McKechnie met him, and said to him, "I think you made a mistake in not permitting Mr. Kingsbury to sell those hops at forty cents," and his reply was, "Yes, perhaps I did. Hops have gone down. Perhaps I made a mistake in not letting him sell, but I shall take care of Sherm.," (meaning Kingsbury,) following it by saying (figuring it up with this friend) "that if he had been allowed by him to have made the sale at forty cents, it would have paid all of Kingsbury's indebtedness, and he would have had something left beside. By the Court: That is, if he had been allowed to sell the hops? Mr. Smith: At forty cents a pound it would have cleared up Mr. Kingsbury entirely upon the indebtedness. That this was prior to the date of the giving of the mortgage before the indorsement of the

twenty-thousand-dollar note in July, 1888. The Court: Do you propose to follow it up by showing by outside parties that he agreed at that time to take care of this indebtedness? Mr. Smith: Yes, sir. The Court: I do not receive it as having any bearing upon that contract. If I receive the evidence it will be for the purpose whether it threw any light upon the reasons why he made this agreement with Mr. Jones. I think I will receive it. Exception. Offer withdrawn." The plaintiff thereupon asked the witness (Kingsbury) to "state whether he showed Mr. McKechnie a telegram." The defendant objected to the evidence as incompetent and immaterial. The objection was overruled, and defendant excepted, and the witness testified that he did; that he read him the telegram; that the telegram was lost; that the telegram read, making "an offer of forty cents a pound on all the hops we had, cash,—to pay for them as fast as they were taken out of the warehouse." That David C. Benham was present. That McKechnie replied that he would hold on,—wouldn't sell. He wanted to hear from some New York party in regard to them. "He decided we wouldn't sell; they would do better. I insisted on selling. I wanted to sell the hops." Plaintiff was permitted to prove by Benham, under the objection and exception of the defendant, the receipt of the telegram about the sale of the hops, and that Mr. McKechnie refused to allow them to be sold, and afterwards stated to the witness Benham that he was sorry, but that he was going to stand by Kingsbury, and that if he had allowed the sale to have taken place it would have paid all of Mr. Kingsbury's debts. The evidence fails to show when this offer to purchase the hops was made. Benham testified that he thought it was in 1887, 1888, or 1889, but was not certain. If it was in 1889 it was after both contracts were made, and necessarily could not have any bearing. The admission of this evidence as to the offer of 40 cents a pound for the hops is sought to be justified upon the theory that it threw some light upon the motives of McKechnie in making the promise to indemnify the plaintiff. The plaintiff was not in any way connected with the hop contract. The obvious purpose and intent of the introduction of this evidence was to get before the jury's mind the fact that the refusal of McKechnie to accept the offer for the hops resulted in the failure of Kingsbury to realize a large profit out of the transaction,—a sum large enough to have paid all his indebtedness,—and thereby relieving the plaintiff from his liability as Kingsbury's indorser. It naturally excited in the minds of the jury a sympathy for Kingsbury and the plaintiff, and a prejudice against McKechnie. It is apparent to any one familiar with the trial of causes before juries that it probably had a serious and damaging effect upon the defendant's case. Jurors not accustomed to intelligently discriminate as to the legitimate bearing of facts in the decision of causes might well have failed to discriminate between an apparent equitable claim of Kingsbury for damages arising out of the transaction and the right of the plaintiff to such damages. This evidence was foreign to the issues that were being tried. It afforded an opportunity for the jury to speculate upon and use it as a basis for their verdict. It was, we think, incompetent evidence, and prejudicial to the defendant's case. And because of its admission, the judgment and order appealed from should be reversed, and a new trial granted, costs to abide the event. All concur.